Juan C. Chavez, OSB #136428
Email: juan@chavezlawpdx.com
65 SW Yamhill St., #300
Portland, OR 97204
Telephone: 971-599-3358
Facsimile: 971-275-1839

    Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| JUSTIN KAY, COURTNEY KRISANDA, and AMANDA SCHEMKES<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BEAVERTON, OFFICER JAMES PARKER, OFFICER MICHEL WILSON, OFFICER DEREK VUYLSTEKE, and SGT. THOMAS CRINO<br><br>Defendants. | Case No.<br><br>COMPLAINT<br>Violation of Civil Rights (42 U.S.C. §1983)<br>State Tort Claim (False Arrest)<br><br>JURY TRIAL DEMANDED |

    This is a Civil Rights and State Tort action stemming from the Defendants' unconstitutional, unnecessary, and intentional attempt to stamp on the free speech rights of activists through intimidation, false charges, and false arrests. Specifically, Officer James, Officer Wilson, Officer Vuylsteke, and Sgt. Crino (collectively, "Defendant Officers") arrested and attempted to charge the Plaintiffs with crimes they knew were no longer valid in Oregon, and, upon information and belief, falsified facts to justify the false arrests of protestors. This is

Page 1
COMPLAINT

part of a pattern and practice of the Beaverton Police to chill free speech and illegally detain protestors.

## JURISDICTION

1. This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331, 1343(a)(3)–(4), and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

## VENUE

2. Venue is proper within the District of Oregon because all of the events giving rise to this claim occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). The acts and practices alleged herein occurred in Beaverton, Washington County, Oregon.

## PARTIES

3. At the time of filing, Plaintiff Justin Kay is a resident of Portland, Multnomah County, Oregon.

4. At the time of filing, Plaintiff Courtney Krisanda is a resident of Portland, Multnomah County, Oregon.

5. At the time of filing, Plaintiff Amanda Schemkes is a resident of Snohomish, Snohomish County, Washington.

6. Defendant City of Beaverton (hereinafter, "the City") is a political subdivision of the State of Oregon, with the capacity to sue and be sued. The Beaverton Police Department (hereinafter, "BPD") is a division of the City.

7. Defendant James Parker is or was an officer with BPD, and is sued in his individual capacity. At all times relevant, Mr. Parker was acting under color of law.

8. Defendant Michel Wilson is or was an officer with BPD, and is sued in his individual capacity. At all times relevant, Mr. Wilson was acting under color of law.

9. Defendant Derek Vuylsteke is or was an officer with BPD, and is sued in his individual capacity. At all times relevant, Mr. Vuylsteke was acting under color of law.

10. Defendant Thomas Crino is or was a sergeant-ranking officer with BPD, and is sued in his individual capacity. At all times relevant, Mr. Crino was acting under color of law.

## FACTUAL ALLEGATIONS

### I.    Background

11. On the night of July 22, 2015, Plaintiffs lawfully wrote messages regarding a political issue of public concern in washable sidewalk chalk on public streets and sidewalks.

12. The messages were regarding the construction of an underground "Animal Research and Care Facility" (hereinafter, "ARCF") at the University of Washington in Seattle. This facility is clearly a matter of public concern; plans for the construction of this facility, and international protest against it, have generated media stories.[1]

13. The ARCF was the subject of a lawsuit through which the University of Washington Regents were found to have violated Washington's Open Public Meetings Act for

---

[1] *See* "Animal-rights activists plan march to protest construction of UW lab." Katherine Long, *The Seattle Times*. October 1, 2015. http://www.seattletimes.com/seattle-news/education/animal-rights-activists-plan-march-to-protest-construction-of-uw-lab/ (Last accessed May 22, 2017); "Activists block construction at site of planned University of Washington animal lab." Eric M. Johnson, *Reuters*. June 1, 2015. http://www.reuters.com/article/us-usa-protest-washington-idUSKBN0OH3DO20150601 (Last accessed May 22, 2017).

approving construction in a secret meeting. Additionally, the ARCF has been the subject of international protest—in over a dozen cities in the U.S., as well as in Sweden and Finland—and in April of 2015, an estimated 500 people marched in Seattle in opposition to the facility.

14. Much of the protest has been focused on international, multi-billion dollar construction corporation Skanska, which is contracted to build the ARCF for approximately $90 million. David Schmidt is a Co-Chief Operating Officer at Skanska, and he signed the construction contract on behalf of Skanska. The neighborhood in which Plaintiffs were detained and arrested was that of David Schmidt, and the chalk messages concerned the ARCF, Schmidt's role in the project, and his ability to rescind the contract on behalf of Skanska.

## II. The Night of July 22-23

15. Around 11:45 pm on July 22, 2015, Plaintiffs used washable sidewalk chalk on the public streets and sidewalks around NW Torrey Pines Ct. and NW Pacific Grove in Beaverton, Oregon.

16. As discussed above, Plaintiffs were quietly using the sidewalk chalk to protest David Schmidt's profiting from the construction of animal testing labs. According to Defendant Parker's police report, some of the statements, written in pink pastel, were: "David Schmidt kills animals," "No rest for animal abusers," "Skanska suck," "David profits from murder," "Schmidty = Animal killer," "David Schmidt builds death labs!" "David Schmidt, It's your fault," "Welcome to the storm week of action Skanska," "Storm Skanska," and "David Schmidt is a killer."

17. Defendants Parker and Crino arrived and immediately detained Plaintiffs. Defendants Parker and Crino told Plaintiffs to sit on the curb. Defendant Crino talked on the

phone. He told the person that the chalk on the ground constituted "harassment," because as he said, "It's not like these are drawings of flowers." As evinced by the Defendant Parker's arrest narrative, Defendant Crino was unreasonably relying on ORS 166.065(1)(a)(B) (Harassment) which was held to be unconstitutional by the Oregon Supreme Court in *State v. Johnson*, 191 P.3d 665, 669 (Or Sup Ct 2008). This is because, as Defendant Officers demonstrated, this portion of the statute was "overbroad" and allowed officers too much discretion to use "the club of Criminal Law" to punish the content of speech. *Id.*

18. At some point while Plaintiffs were detained, Defendants Wilson and Vuylsteke showed up at the scene and immediately joined in the unconstitutional and tortious conduct of Defendants Parker and Crino.

19. Plaintiffs were arrested, and taken to a BPD holding cell. Plaintiff Kay heard the Defendant Officers discussing the drafting of the arrest narrative. Kay heard one of the officers say, "I want you to write it this way," and directed the officer to use of words such as "scared," "nervous," and "fearful" to describe the alleged feelings of Schmidt and his neighbors. In their own observations, Plaintiffs did not see any of the neighbors acting as the officer described. Kay also overheard the primary officer reiterate the importance of filing the three charges of criminal mischief, disorderly conduct, and harassment by saying, "I doubt they will stick, but do it anyway; we've got the two ringleaders," referring to Plaintiffs Kay and Schemkes.

20. To justify the "criminal mischief" arrest, Defendant Officers cited that the clean-up costs of removing the washable sidewalk chalk was "approximately $500," also the exact amount described in ORS 164.354 (Criminal Mischief in the Second Degree). It is unclear who incurred this alleged cost and why a "Skanska USA water truck," as described in the arrest

narrative, was needed to remove the chalk. No accounting or receipts were included to justify or evidence such a cost. Upon information and belief, Defendant Officers created these fallacious details to justify the further detention of Plaintiffs.

21. The last alleged justification for arrest was Disorderly Conduct II (ORS 166.025). As Defendant Wilson's own account details, the witness to Plaintiffs' conduct informed Defendant Wilson the Plaintiffs "were very quiet and didn't make any sound." No other conduct on Plaintiffs' part meets the statutory definition of Disorderly Conduct II.

22. Moreover, one of the officers informed Plaintiffs that "if there had been one more of you, we could have charged you for rioting." This, in response to Plaintiffs' quiet and peaceful conduct of writing in washable sidewalk chalk.

23. Plaintiffs remained in BPD's custody for a few hours. Plaintiffs were searched and humiliated. One of the Plaintiffs was menstruating and was mocked for requesting hygiene products. Eventually, they were taken into the Washington County Sheriff's Office's custody, and later released.

24. BPD referred the case to the Washington County District Attorney's Office, who declined to prosecute, as the Defendant Officers had predicted.

25. Being falsely arrested and targeted for reprisal by BPD has caused Plaintiffs much stress and fear. Plaintiff Kay missed work the next morning because of his detention, and Plaintiffs Schemkes and Krisanda experienced physical manifestations of stress, including severe gastrointestinal pain (Krisanda) and a stomach ulcer (Schemkes).

///

///

### III. Continuous Harassment of Protestors and Aftermath

26. Since their arrest, BPD officers have repeatedly pulled over protestors (including Plaintiff Kay twice and Plaintiff Schemkes once) as they left protests in Schmidt's neighborhood. Up to fifteen police vehicles have been counted in the neighborhood during protests attended by Plaintiffs (even though most protests had fewer than 20 people), and officers often approached protesters, put cameras in their faces, and urged for protestors to end their *lawful* activity. In one instance, an officer even made an intimidating comment to Plaintiff Kay about knowing where his parents live.

27. On November 18, 2015, nine people (six of them small women), including Mr. Kay and Ms. Schemkes, gathered for a protest on the public street. When police officers arrived, the protesters were able to count eleven officers standing around them, and at least four of the officers were wearing shirts marked "Juvenile Gang Unit."

28. During the protest, even after people complied with a request to stop using megaphones, multiple officers got within inches of people's faces to film them, take photographs, and shine flashlights in their eyes. When Kay tried to photograph the officers—another lawful activity—they pointed flashlights at him so that photos would be unclear, and most of the officers ignored the requests of Plaintiffs Kay and Schemkes for them to provide business cards or to verbally identify themselves.

29. Protesters overheard the officers talking about plans to ticket people for jaywalking if they didn't walk on the sidewalk to their cars, even though several officers were standing in the middle of the street and no cars were driving in the street. Officers followed the

protesters to their cars, and on the walk to their cars, the protesters saw at least three more male officers in the neighborhood.

30. Defendant City of Beaverton further solidified its front against protestors by passing two city ordinances designed to curtail and chill the rights of protestors, in a direct reaction to Plaintiffs' First Amendment activities.[2]

31. This behavior of repeated harassment of lawful protestors from the BPD can only be the result of a custom, policy, and practice to restrain First and Fourth Amendment rights.

## CLAIMS FOR RELIEF

32. Defendants are persons within the meaning of 42 U.S.C. 1983.

33. Plaintiffs seek an award of economic damages, non-economic damages, punitive damages where appropriate, attorney fees, and litigation expenses/costs against Defendants.

### CLAIM 1: VIOLATION OF FOURTH AMENDMENT
### (Illegal Search and Seizure– 42 U.S.C. 1983 – Individual Liability)

34. Plaintiffs restate and incorporate here the allegations in paragraphs 1 through 31.

35. Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his or her person.

36. In taking the actions described above, including but not limited to using false claims to detain Plaintiffs without probable cause, Defendant Officers intentionally and unreasonably violated Plaintiffs' right to be free from illegal seizure, guaranteed by the Fourth Amendment to the United States Constitution.

---

[2] "Beaverton approves ordinances aimed at animal rights protesters." Allan Brettman, *The Oregonian*. March 3, 2016. http://www.oregonlive.com/washingtoncounty/index.ssf/2016/03/post_76.html#incart_river_home_pop (last accessed May 22, 2017).

37. Defendant Officers violated rights held by Plaintiffs' which were clearly established, and no reasonable official similarly situated to Defendant Officers could have believed that his or her conduct was lawful or within the bounds of reasonable discretion. Indeed, *State v. Johnson*, 191 P.3d 665, 669 (Or Sup Ct 2008) (regarding the invalidity of a "harassment" charge premised on ORS 166.065(1)(a)(B)) has been the law in Oregon for nearly a decade. Defendant Officers therefore do not have qualified or statutory immunity from suit or liability.

38. The actions of Defendant Officers, as described in this complaint, were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon Plaintiffs. As a result of said intentional conduct, Plaintiffs are entitled to punitive damages against Defendant Officers, in their individual capacities, in an amount sufficient to punish them and to deter others from like conduct.

39. The unreasonable seizures of the Plaintiffs were the direct and proximate cause of loss of liberty, physical illness, mental and emotional suffering, worry, fear, anguish, shock, anxiety, and nervousness—and, in the case of Mr. Kay, lost wages. Platintiffs are entitled to all of their damages in an amount to be ascertained according to proof at trial.

### CLAIM 2: VIOLATION OF FIRST AMENDMENT
### (Illegal Abridgment of Speech—42 U.S.C. § 1983—Individual Liability)

40. Plaintiffs restate and incorporate here the allegations in paragraphs 1 through 31.

41. Under the First Amendment, a citizen has the right to free expression. Plaintiffs here were engaged in a constitutionally protected activity that did not violate any law.

42. As described above, Defendant Officers' actions against Plaintiffs would chill a person of ordinary firmness from continuing to engage in the protected activity, as repeated and frequent harassment and threats of false, trumped-up charges reasonably could.

43. As demonstrated by their conduct, Defendant Officers were motivated to quell Plaintiffs' speech based on its content.

44. This illegal abridgment of the Plaintiffs' rights to free speech was the direct and proximate cause of loss of liberty, physical illness, mental and emotional suffering, worry, fear, anguish, shock, anxiety, and nervousness. Plaintiffs are entitled to all of their damages in an amount to be ascertained according to proof at trial.

## CLAIM 3: VIOLATION OF FIRST AMENDMENT
**(Illegal Abridgment of Free Speech; Failure to Train—42 U.S.C. § 1983—*Monell* Liability)**

45. Plaintiffs restate and incorporate here the allegations in paragraphs 1 through 31.

46. Defendant Officers acted under color of state law and, as described in Claims 1 and 2, deprived Plaintiffs of their particular rights under the United States Constitution.

47. Defendant Officers were following a practice or custom of Defendant City of Beaverton to cause the deprivation of Plaintiffs' rights by targeting protestors for arrest and ticketing without probable cause. Furthering this practice, Defendant City has either failed to train its officers about well-settled case law, or is openly flouting training its officers about said case law to allow the targeting of protestors. These repeated constitutional violations have been not properly investigated, nor have the violators been disciplined, reprimanded or punished.

48. As a result of the above-described conduct, Defendants caused Plaintiffs to suffer emotional distress, discomfort, fear, frustration, and humiliation, including attendant physical symptoms of emotional distress, and may suffer further damages in an amount to be determined by a jury.

## CLAIM 4: VIOLATION OF FOURTH AMENDMENT
**(Illegal Search and Seizure; Failure to Train—42 U.S.C. § 1983—*Monell* Liability)**

49. Plaintiffs restate and incorporate here the allegations in paragraphs 1 through 31.

50. Defendant Officers acted under color of state law and, as described in Claims 1 and 2, deprived Plaintiffs of their particular rights under the United States Constitution.

51. Defendant Officers were following a practice or custom of Defendant City of Beaverton to cause the deprivation of Plaintiffs' rights to not be illegally searched and detained. Furthering this practice, Defendant City has either failed to train its officers about well-settled case law, or by openly flouting training its officers about said case law to allow for the illegal detention of protestors. These repeated constitutional violations have been not properly investigated, nor have the violators been disciplined, reprimanded or punished.

52. As a result of the above-described conduct, Defendants caused Plaintiffs to suffer emotional distress, discomfort, fear, frustration, and humiliation, including attendant physical symptoms of emotional distress, and may suffer further damages in an amount to be determined by a jury.

### CLAIM 5: FALSE ARREST
### (State Tort Law — Respondeat Superior)

53. Plaintiffs restate and incorporate here the allegations in paragraphs 1 through 31.

54. As described above, Defendant City intentionally and unlawfully restrained Plaintiffs' freedom of movement, causing their arrest and subsequent harm.

55. As a result of the above-described conduct, Defendant City caused Plaintiffs to suffer emotional distress, discomfort, fear, frustration, and humiliation, including attendant physical symptoms of emotional distress, and may suffer further damages in an amount to be determined by a jury.

///

///

## INJUNCTIVE RELIEF
### (Official Capacity)

55. Plaintiffs are entitled to injunctive relief prohibiting Defendants and their successors from:

   a. Falsely accusing protestors of criminal conduct;
   b. Enforcing a policy and practice of chilling the speech of protestors; and
   c. Failing to train their officers of relevant Oregon case law

## DEMAND FOR JURY TRIAL

56. For all claims alleged in this Complaint, Plaintiffs demand a jury trial.

## REASONABLE ATTORNEY'S FEES AND COSTS

57. 42 U.S.C. § 1988(b) allows "the prevailing party… a reasonable attorney's fee as part of the costs…" in an action brought under 42 U.S.C. § 1983.

58. Plaintiff requests that the Court grant a reasonable attorney's fee in this action.

## CONCLUSION

WHEREFORE, Plaintiffs pray for relief as follows:

a. For judgment in favor of Plaintiffs against Defendants for their damages;

b. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

c. For such other and further relief as may appear just and appropriate.

DATED: July 12, 2017

*/s/ Juan C. Chavez*
Juan C. Chavez, OSB #136428
Email: juan@chavezlawpdx.com
65 Yamhill St., #300
Portland, OR 97204

*LEAD ATTORNEY*